UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. **20cr2115-LAB** |
|---|---|
| Plaintiff, | |
| v. | I N F O R M A T I O N |
| GINA CHAMPION-CAIN, | 18 U.S.C. § 371 – Conspiracy |
| Defendant. | 15 U.S.C. §§ 77q, 77x – Securities Fraud |
| | 18 U.S.C. § 1505 – Obstruction of Justice |

The United States Attorney charges, at all times material:

**BACKGROUND**

<u>Defendant and Her Companies</u>

1. Defendant Gina Champion-Cain was a resident of San Diego, California. Defendant owned, managed, and/or controlled a significant number of small businesses located, and that operated, in San Diego.

2. American National Investments, Inc. ("American National Investments") was a California corporation based in San Diego. Defendant was the founder and CEO of American National Investments.

1

American National Investments was a real estate development company, and the parent company of a large number of small businesses, which operated primarily in the real estate, retail, and restaurant sectors.

3. ANI Development, LLC ("ANI Development"), was a California limited liability company located in San Diego, and a subsidiary of American National Investments. Defendant was the managing member of ANI Development. ANI Development's business consisted primarily of running a fake lending program (the "Lending Program") surrounding the transfer of California liquor licenses, as described more fully below.

<u>Liquor License Transfers in California</u>

4. Under California law, an applicant who wished to purchase a California liquor license from an existing licensee was required to place in an escrow account an amount of money equal to the purchase price of the license.

5. This escrow account was required to be established and funded within 30 days of applying for the license, and the money deposited was required to be maintained in escrow until the California Department of Alcoholic Beverage Control (the "ABC") either (a) approved the application and the purchase of the license was completed, or (b) declined the application, at which point the escrowed funds were returned to the depositor.

**COUNT 1**

**CONSPIRACY – 18 U.S.C. § 371**

6. Beginning at least as early as 2012, and continuing until September 2019, within the Southern District of California and elsewhere, Defendant Gina Champion-Cain knowingly and intentionally conspired and agreed with others to: (1) commit securities fraud, in

2

violation of 15 U.S.C. §§ 77q and 77x; and (2) obstruct justice, in violation of 18 U.S.C. § 1505.

7. The purposes of the conspiracy included:

    a. obtaining hundreds of millions of dollars from investors and using that money to (i) pay back previous investors, and (ii) pay for Defendant's personal and business expenses, instead of investing that money in loans to liquor license applicants, as Defendant represented to investors; and

    b. avoiding detection of the fraudulent scheme by the FBI and United States Securities and Exchange Commission ("SEC").

<u>Manner and Means of the Conspiracy</u>

8. To further the conspiracy, Defendant and her co-conspirators used the following manner and means, among others:

    a. Beginning in or around 2012, Defendant would solicit investments from investors in the Lending Program based on a series of misrepresentations. For example, Defendant told investors, including on the phone and by email, that:

        i. Many applicants who wished to acquire a California liquor license did not have sufficient funds to deposit the license's full purchase price in an escrow account for the time period that the ABC takes to review a transfer application. Because of their lack of liquid funds, these applicants were willing to pay relatively high rates of interest on short-term loans that would fund the escrow account.

        ii. Through Defendant and her entities, including ANI Development, investors could fund high interest rate loans to liquor license applicants.

3

    iii. Investor funds would be maintained in escrow accounts that were associated with specific liquor license applications, and the investor funds could not be withdrawn from such escrow accounts except by the investor who deposited the funds after the ABC accepted or declined the corresponding transfer application.

  b. Defendant and her co-conspirators would accept hundreds of millions of dollars of investments into the Lending Program from hundreds of individual and institutional investors located throughout the United States.

  c. Defendant and her co-conspirators, however, would not place investor funds in the Lending Program, which was completely fictitious.

  d. Defendant and her co-conspirators would forge the signatures of escrow company employees on escrow agreements that purportedly controlled the receipt, maintenance, and distribution of investor funds, but that were never actually operative.

  e. Defendant would lie about investor funds being tied to specific liquor license loan applications, when she knew that investor funds were pooled in large, general purpose escrow accounts that were not connected to specific liquor license loan applications.

  f. Defendant would misrepresent to investors that she would invest their funds in the Lending Program. Instead of directing that investor funds be used in connection with the transfer of any liquor licenses, Defendant and her co-conspirators would (i) use incoming investor funds to make principal and interest payments based on investments that could soon be redeemed in the Lending Program, and (ii) embezzle investor funds to finance and support some of Defendant's

and American National Investments' other businesses (some of which were failing), and to fund Defendant's lifestyle.

   g. Defendant and her co-conspirators would make efforts to conceal her fraudulent scheme.  For example, Defendant would dissuade investors from contacting escrow company employees about the Lending Program, and would dissuade escrow company employees from answering questions from investors.

   h. Defendant and her co-conspirators would forge and otherwise falsify a large number of documents related to the Lending Program.

   i. Defendant would lie, and instruct others to lie, to auditors working on behalf of investors.  Among other things, these auditors were attempting to confirm the investors' balances and activity in the Lending Program.

   j. Defendant would establish phony email accounts so that investors would think they were corresponding with other parties involved, or supposedly involved, in the Lending Program.  Defendant would use these email accounts to answer questions posed by investors and confirm investor balances on deposit with the Lending Program, and otherwise convince investors that the Lending Program was legitimate.

   k. Defendant and her co-conspirators would destroy or conceal emails, documents, video surveillance footage, and accounting records that they knew would provide evidence of the fraudulent scheme surrounding the Lending Program.

### Overt Acts

 9. In furtherance of this conspiracy, and to carry out its objects, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

5

a. On or about March 20, 2015, Defendant sent an email to an escrow company employee regarding an investor who attempted to contact the escrow company about a recent deposit. Defendant's email stated, in part, "I have always promised you I would shelter you from my crazy investors and I will continue to do so. If any one of them bug you as they are too stupid to understand the program, they are 'fired' as an investor. I have plenty of dudes dying to give me money, honey!!! Ahahahahahahahaha. :-D Love you ladies!"

b. On or about July 13, 2017, Defendant solicited investments in the Lending Program by emailing to an investor (i) a fabricated list of purported liquor license applicants who were looking for funding, and (ii) a forwarded email that Defendant wrote about the Lending Program that was purportedly drafted by an attorney who had experience with liquor license applications.

c. On or about July 18, 2017, Defendant sent an email to an escrow company employee regarding an investor attempting to contact the escrow company about the Lending Program. Defendant's email stated, in part, "I told them NEVER to call and bother you ladies," and "if they call asking about escrow agreements and alcohol licenses, blah, blah, blah … just say 'SURE WHATEVER NOW SHOW ME THE MONEY … HAHAHAHA.'"

d. On or about April 17, 2018, Defendant and an employee of the escrow company exchanged emails about whether Defendant should be present for a call with an investor in the Lending Program. Defendant concluded that her presence was not required: "no need love as I am sure you will just brush them off quickly."

e. On or about April 25, 2018, Defendant sent an email instructing a co-conspirator to provide wiring information to an escrow

6

company employee in order to transfer investor funds from an escrow company account to the account of one of Defendant's business entities.

      f.   On or about May 31, 2019, a co-conspirator sent an email to a bank representative attaching a fabricated statement for one of Defendant's brokerage accounts in connection with a line of credit.

      g.   In or around July 2019, in response to a subpoena issued by the SEC, Defendant instructed information systems personnel at American National Investments to refrain from producing to the SEC electronic calendar, messaging, and trash files, even though such files should have been produced in response to the subpoena.  As Defendant knew, many of these materials were incriminating.

ALL IN VIOLATION OF 18 U.S.C. § 371.

## COUNT 2

### SECURITIES FRAUD, 15 U.S.C. §§ 77q, 77x

10.   Paragraphs 1 through 5 above are re-alleged as if fully set forth herein.

11.   Beginning at least as early as 2012, and continuing until early 2020, within the Southern District of California and elsewhere, Defendant Gina Champion-Cain willfully and knowingly, directly and indirectly, by the use of the means and instruments of transportation and communication in interstate commerce and by use of the mails, in connection with the offer and sale of securities associated with loans made to California liquor license applicants, did employ a device, scheme, and artifice to defraud; obtain money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged

in transactions, practices, and courses of business which operated and would operate as a fraud or deceit upon the purchaser.

12. Paragraphs 8 through 9 of Count 1 are realleged and incorporated by reference as more fully describing the fraudulent devices, schemes, artifices, untrue statements, omissions, transactions, and courses of business used in connection with the offer and sale of securities.

ALL IN VIOLATION OF 15 U.S.C. §§ 77q, 77x.

### COUNT 3

### OBSTRUCTION OF JUSTICE, 18 U.S.C. § 1505

13. Paragraphs 1 through 5 and 8 through 9 above are re-alleged as if fully set forth herein.

14. Beginning in or around July 2019, and continuing until at least September 2019, Defendant Gina Champion-Cain did corruptly impede and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Securities and Exchange Commission, an agency of the United States.

ALL IN VIOLATION OF 18 U.S.C. §1505.

### FORFEITURE ALLEGATIONS

15. The allegations contained in paragraphs 1-5 and Counts 1-3 of this Information are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

16. Upon conviction of the offenses set forth in Counts 1-3, Defendant Gina Champion-Cain shall forfeit to the United States any property, real and personal, which constitutes or is derived from proceeds traceable to the violations.

17. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), Defendant shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the Defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

ALL PURSUANT TO Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

DATED: July 21, 2020

ROBERT S. BREWER, JR.
United States Attorney

*Aaron Arnzen*
_____
AARON P. ARNZEN
ANDREW J. GALVIN
Assistant United States Attorneys